IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

NORMA MORALES,                          )
                                        )
            Plaintiff,                  )       CV. NO. SA-11-CV-00947-DAE
                                        )
vs.                                     )
                                        )
CORINTHIAN COLLEGES, INC.,              )
                                        )
            Defendant.                  )
                                        )

ORDER: (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT; (2) DISMISSING PLAINTIFF'S CLAIM; AND (3) GRANTING
PLAINTIFF LEAVE TO AMEND

On August 2, 2013, the Court heard Defendant Corinthian Colleges

Inc.'s Second Motion for Summary Judgment ("Motion") ("MSJ," doc. # 37).

Plaintiff Norma Morales ("Plaintiff") appeared pro se; Ashley Brunner Barr and

Christopher J. McKinney appeared on behalf of Defendant Corinthian Colleges,

Inc. ("Defendant").  After reviewing the Motion and the supporting memorandum,[1]

the Court **GRANTS** Defendant's Motion, **DISMISSES WITHOUT**

**PREJUDICE** Plaintiff's negligent hiring cause of action for failure to state a

claim, and **GRANTS** Plaintiff leave to amend.

---

[1]   Plaintiff did not file a Response in opposition to Defendant's Motion.

1

BACKGROUND

Defendant is a post-secondary education company that operates more than one hundred for-profit colleges in North America.  (Mot. at 4.)  One of the colleges operated by Defendant is called Everest Institute.  (Id.)  In February 2009, Plaintiff enrolled in the medical administrative assistant program at Everest Institute's San Antonio location.  (Id. Ex. 1.)

Plaintiff claims that she was sexually harassed by one of her instructors, Joseph Graham ("Graham"), while attending Everest Institute. ("Compl.," Doc. # 1 Ex. 1 ¶¶ 11, 12.)  She alleges that Graham "kept insisting that some sort of sexual contact between [them] take place," "repeatedly asked [her] to go on a date with him," and repeatedly told her that "if she did not go out with him she would be unable to find a job in the medical industry."  (Compl. ¶¶ 15–19.) According to Plaintiff, on one occasion Graham "turned off the lights and blocked the door so [she] could not leave the classroom and . . . kissed [her] against her will," telling her, "you don't know who you're f***ing with."  (Id. ¶ 21.)  Plaintiff claims that she "even feared for her safety during many of these instances."  (Id. ¶ 20.)  Plaintiff alleges that she refused to go out with Graham and "constantly and unequivocally rebuffed" his "advances."  (Id. ¶¶ 14, 17.)

According to Plaintiff, she "constantly and repeatedly complained about Joseph Graham's conduct to officials at the Everest Institute"—first to

Yvonne Carrasco ("Carrasco"), an Admissions Officer, and then to Angela Romero ("Romero"), a Student Finance Planner.  (Id. ¶¶ 23–25.)  Carrasco and Romero allegedly told Plaintiff to talk to Margot Madrigal ("Madrigal"), the Director of Education.  (Id. ¶ 26.)  Plaintiff claims that she talked to Madrigal and "even brought a witness to attest to what [she] was stating," but Madrigal did not conduct any investigation.  (Id. ¶¶ 27, 28.)  Plaintiff alleges that she next complained to Kristi Moses, an administrator at Everest Institute, and to Jessica Hernandez, the Director of Career Services, but "still no investigation was conducted into [her] complaints."  (Id. ¶ 29.)  Plaintiff maintains that Defendant was aware that Graham had "little to no qualifications to teach [the] class," and the class was "nothing more than Joseph Graham's own personal pool of victims."  (Id. ¶¶ 31, 32.)

Plaintiff finished the medical administrative assistant program in November 2009.  (Mot. Ex. 3 at 5.)  She alleges that she has been unable to find employment since graduating, "which is exactly what Joseph Graham said would happen if she did not have sexual relations with him."  (Compl. ¶ 34.)

On October 12, 2011, Plaintiff filed this action in state court, alleging causes of action for negligence, fraud, and Title IX sexual harassment.  (Compl.)  Plaintiff also seeks a declaratory judgment that the Dispute Resolution Agreement entered into between Plaintiff and Defendant is invalid.  (Id.)  On November 11,

2011, Defendant removed the case to this Court.  (Doc. # 1.)  Defendant filed a

Motion for Summary Judgment on November 21, 2012.  (Doc. # 25.)  Plaintiff did

not file a Response in Opposition.  On April 22, 2013, the Court held a hearing on

Defendant's Motion for Summary Judgment.  (Doc. # 33.)  Plaintiff, appearing pro

se, represented to the Court that one of her classmates at Everest Institute,

Cassandra Munoz ("Munoz"), witnessed Graham harassing Plaintiff, and also

accompanied Plaintiff to report Graham's conduct to Everest Institute's

administration.  The Court ordered Defendant to take Munoz's deposition and

denied Defendant's Motion for Summary Judgment without prejudice.  (Docs.

## 33, 34.)  On June 20, 2013, Defendant filed the Second Motion for Summary

Judgment currently before the Court.  (Mot.)  Again, Plaintiff did not file a

Response in Opposition.

STANDARD OF REVIEW

I.      Motion for Summary Judgment

            Summary judgment is granted under Federal Rule of Civil Procedure

56 when "the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);

see also Cannata v. Catholic Diocese of Austin, 700 F.3d 169, 172 (5th Cir. 2012).

The main purpose of summary judgment is to dispose of factually unsupported

claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

4

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Id. at 323.  If the moving party meets this burden, the non-moving party must come forward with specific facts that establish the existence of a genuine issue for trial.  ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012).  In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

## DISCUSSION

Plaintiff's Complaint alleges causes of action for negligence, fraud, and Title IX sexual harassment.  Defendant seeks summary judgment on all three claims on the basis that Plaintiff has not produced sufficient evidence to establish the existence of a genuine issue for trial with respect to any of them.

I.    <u>Negligent Hiring</u>

Plaintiff's negligence claim alleges that Defendant breached its duty to Plaintiff by hiring Graham despite the fact that he "had little or no qualifications to teach." (Compl. ¶¶ 35–37.) A negligent hiring cause of action, like a classic negligence action, consists of three elements: a duty, a breach of that duty, and damages proximately caused by the breach of duty. <u>Doe v. Boys Clubs of Greater Dallas, Inc.</u>, 907 S.W.2d 472, 477 (Tex. 1995). "The basis of responsibility for negligent hiring . . . is the employer's negligence in hiring or retaining an incompetent employee who the employer knew or, in the exercise of ordinary care, should have known was incompetent or unfit, and thereby creating an unreasonable risk of harm to others." <u>Ogg v. Dillard's, Inc.</u>, 239 S.W.3d 409, 420 (Tex. App. 2007). An employer is only liable if the employer's failure to investigate or screen its hiree was a proximate cause of the plaintiff's injuries. <u>Fifth Club, Inc. v. Ramirez</u>, 196 S.W.3d 788, 796 (Tex. 2006). Thus, an employer is not liable when there is nothing in the employee's background that would lead a reasonable employer not to hire the employee. <u>Ogg</u>, 239 S.W.3d at 421.

Defendant seeks summary judgment on the basis that Plaintiff has produced no evidence that Defendant was negligent in its hiring of Graham. Specifically, Defendant asserts that "Plaintiff has produced no evidence that Graham 'had little or no qualifications to teach.'" (Mot. at 8.) Defendant points

6

out that the only evidence that Graham was unqualified to teach is Plaintiff's own

deposition testimony, which Defendant claims sets forth "ultimate or conclusory

facts" and thus is insufficient to defeat a motion for summary judgment.  (Id. at 9.)

During her deposition, Plaintiff stated:

> [T]he majority of the time, he [Graham] would just – you know,
> wouldn't say anything in class, and if he did, basically, he didn't teach
> us a thing. . . .  He was always talking about gang life in Chicago and
> all his tattoos because there was a lot of young kids that had a lot of
> tattoos and stuff.  And we're like, "We're not getting nothing out of
> this classroom."  But, yes, we're – we have to pay, so we have to
> attend school.  So, like I said, everything that we learned was from the
> book.

("Morales Depo.," Mot. Ex. 4 at 56:14–23.)  The Court disagrees with Defendant's

characterization of this testimony as conclusory and factually unsupported.

Plaintiff does not opine on Graham's technical qualifications or state that

Defendant failed to exercise reasonable care in hiring him; instead, she sets forth

specific facts tending to show that Graham was unqualified to teach the class.

However, the Court need not decide whether Plaintiff's deposition

testimony is sufficient to establish a genuine issue for trial regarding Graham's

qualifications.  Even assuming, as Plaintiff alleges, that Graham "had little or no

qualifications to teach" (Compl. ¶ 36), the Court concludes that dismissal is

warranted because Plaintiff has failed to state a claim upon which relief can be

granted.  See Fed. R. Civ. P. 12(b)(6) (authorizing dismissal of a complaint for

"failure to state a claim upon which relief can be granted").  As discussed above, in order to prevail on a negligent hiring claim, a plaintiff must prove that an employer's failure to properly screen a hiree was a proximate cause of the plaintiff's injury.  "Proximate cause has two elements: cause in fact and foreseeability."  Western Investments, Inc. v. Urena, 162 S.W.3d 547, 551 (Tex. 2005).  Foreseeability, the second component of proximate cause, "requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission."  Boys Clubs of Greater Dallas, 907 S.W.2d at 478.  A danger of injury is foreseeable if its "general character . . . might reasonably have been anticipated."  Id. (internal quotation marks omitted) (quoting Nixon v. Mr. Property Mgmt. Co., Inc., 690 S.W.2d 546, 551 (Tex. 1985)).

In Doe v. Boys Clubs of Greater Dallas, Inc., the case stemmed from the alleged sexual molestation of a number of minor children by a volunteer worker at the Boys Club in Mesquite, Texas.  907 S.W.2d at 475.  The minor children and their guardians brought a cause of action against the Boys Clubs of Greater Dallas, Inc. ("Boys Club") for negligent hiring, alleging that the Boys Club had failed to adequately investigate the volunteer in question.  Id. at 476.  The Court held that the Boys Club's alleged negligence was not a proximate cause of the plaintiffs' injuries, because even if the Boys Club had investigated the volunteer's criminal record, his only prior convictions—misdemeanor DWI

8

convictions—"would not have caused the club reasonably to anticipate his subsequent sexual assaults on the minor plaintiffs." Id. at 478.  The Court found that "[t]he course of events was such that [the volunteer's] assaults . . . [were] so remotely related to the Boys Club's failure to investigate, screen, or supervise volunteers that no reasonable mind could anticipate the result." Id.

In this case, the relationship between Defendant's alleged failure to investigate Graham's qualifications to teach and the alleged sexual harassment is even more remote.  Graham's qualifications as a teacher are wholly unrelated to his propensity to sexually harass students, so no amount of investigation into his qualifications as a teacher would have allowed Defendant to reasonably anticipate that Graham would sexually harass Plaintiff.  Thus, even assuming the truth of Plaintiff's allegation that Defendant was negligent in "hiring the sexual harasser, Joseph Graham, who had little or no qualifications to teach" (Compl. ¶ 36), Plaintiff's claim fails.  See In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (noting that when analyzing a motion to dismiss for failure to state a claim, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff'") (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)).

In addition, the Court notes that an employer cannot be held liable for the negligent hiring of an employee unless the employee in question committed an

9

actionable tort.  See Waffle House, Inc. v. Williams, 313 S.W.3d 796, 800 n.2 (Tex. 2010).  This is so because "a person is not liable for negligence, no matter how egregious, unless the negligence causes a legally compensable injury." Gonzales v. Willis, 995 S.W.2d 729, 739 (Tex. App. 1999) (overruled in part on other grounds by Hoffmann-La Roche Inc. v. Zeltwanger, 144 S.W.3d 438, 447–48 (Tex. 2004)).  If the employee did not commit an actionable tort, the plaintiff has suffered no injury under the law, and the employer's negligence has not caused any legally compensable injury.  Id.

"Sexual harassment has never been a common law tort; as a cause of action, it is a statutory creation."  Id. (quoting Hays v. Patton-Tully Tranp. Co., 844 F. Supp. 1221, 1223 (W.D. Tenn. 1993)).  Accordingly, "negligent hiring will be a viable cause of action in a sexual harassment case only if the harassment encompasses misconduct that is independently actionable under the common law, such as battery or intentional infliction of emotional distress."  Id.  In this case, Plaintiff does not allege that Graham committed any particular underlying tort, although she alleges that Graham kissed her against her will (id. ¶ 21), which may constitute a battery, and she may have a claim against Graham for intentional infliction of emotional distress as well.  In order to prevail on a negligent hiring claim, Plaintiff must be prepared to establish that Graham committed an actionable tort—not that he sexually harassed her.

10

For the reasons stated above, the Court dismisses Plaintiff's negligent hiring cause of action for failure to state a claim.  See Carroll v. Fort James Corp., 470 F.3d 1171, 1177 (5th Cir. 2006) ("[A] district court may dismiss a complaint on its own for failure to state a claim.").  Because Plaintiff is proceeding pro se, the Court will allow her an opportunity to file a First Amended Complaint within thirty (30) days of the filing of this Order, or by September 3, 2013.  See Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam) (noting that a district court generally errs in dismissing a pro se complaint for failure to state a claim without giving the plaintiff leave to file an amended complaint).  Plaintiff must allege specific facts indicating that Defendant knew or should have known that Graham had a propensity for engaging in sexual harassment.  Plaintiff must also be prepared to prove that Graham's misconduct amounted to an actionable tort.

II.    Fraud

        Plaintiff's fraud claim alleges that Plaintiff chose to attend Everest Institute because Defendant represented that "it would provide a quality education to Plaintiff free of harassment by teachers."  (Compl. ¶¶ 38, 39.)  Plaintiff claims that this representation was false and Defendant knew that it was false or made it recklessly with the intent that Plaintiff would act on it by enrolling at Everest Institute.  (Id. ¶¶ 40–42.)

11

In order to state a claim for fraud under Texas law, a plaintiff must prove:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am., 341 S.W.3d 323, 337 (Tex. 2011). Defendant argues that there is a total absence of evidence to support any aspect of Plaintiff's fraud claim. (Mot. at 9.) The Court agrees.

During her deposition, Plaintiff described a pre-enrollment visit to Everest Institute. (Morales Depo. at 40.) Plaintiff stated that "Ms. Carrasco" walked her around and told her about the school. (Id. at 40:1–5.) According to Plaintiff, Ms. Carrasco told her "that it was [a] good school." (Id. at 40:6.) When asked whether Ms. Carrasco told Plaintiff anything else about Everest Institute that made her want to go there, Plaintiff stated: "She said that it was a good school, that they had helped a lot of people getting jobs in the medical field, and that they would help me find a job in the medical field." (Id. at 40:11–14.) At the end of the visit, Plaintiff enrolled. (Id. at 40:7–8, 23–25.) Plaintiff did not testify that Ms. Carrasco or any other member of Defendant's staff represented to Defendant that it "would provide a quality education to Plaintiff free of harassment by teachers."

12

(Compl. ¶ 38.)  Thus, Plaintiff's own testimony made no mention of the alleged

material misrepresentation that forms the basis for her fraud claim.  The evidence

submitted by Defendant in support of its Motion establishes that there is no

genuine issue for trial with respect to Plaintiff's fraud claim; no reasonable

factfinder could find that Defendant had made the misrepresentation alleged.  See

Lujan v. Defenders of Wildlife, 504 U.S. 555, 590 (1992) ("A genuine issue exists

so long as the evidence is such that a reasonable jury could return a verdict for the

nonmoving party. . . .") (internal quotation marks omitted) (quoting Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  Thus, the Court concludes that

Defendant is entitled to summary judgment on Plaintiff's fraud claim.

III.    Title IX Sexual Harassment

          Plaintiff alleges that she was subjected to sexual harassment and a

sexually hostile environment, and that when she brought the situation to the

attention of officials at Everest Institute, they reacted with deliberate indifference

and failed to take corrective action.  (Compl. ¶¶ 45–47.)  Defendant seeks

summary judgment on the basis that Plaintiff has not produced any evidence that

Defendant had actual notice or acted with deliberate indifference.  (Mot. at 11.)

          Title IX of the Education Amendments of 1972 provides in relevant

part: "No person in the United States shall, on the basis of sex . . . be subjected to

discrimination under any education program or activity receiving Federal financial

assistance. . . ."  20 U.S.C. § 1681(a).  The Supreme Court has recognized sexual

harassment as a form of intentional discrimination encompassed by Title IX,

including sexual harassment of a student by a teacher.  Jackson v. Birmingham Bd.

of Educ., 544 U.S. 167, 174 (2005).  In order to prevail on a Title IX sexual

harassment claim, a student alleging sexual harassment by a teacher must establish:

(1) that a school official with authority to address the alleged discrimination had

actual knowledge of the discrimination; and (2) the school's response amounted to

deliberate indifference to discrimination. See Gebser v. Lago Vista Indep. Sch.

Dist., 524 U.S. 274, 290 (1998).  The Fifth Circuit has observed that "[d]eliberate

indifference is an extremely high standard to meet."  Domino v. Tex. Dep't of

Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001).  "For a school to be liable under

title IX, its response, or lack thereof, to the harassment must be 'clearly

unreasonable in light of the known circumstances.'" Sanches v. Carrollton-Farmers

Branch Indep. Sch. Dist., 647 F.3d 156, 167 (5th Cir. 2011) (quoting Davis Next

Friend LaShonda D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 648 (1999)).

      Defendant maintains that evidence it submitted with its Motion

establishes that Plaintiff complained about Graham to members of its staff on only

two occasions, and on both occasions, Defendant's response was reasonable.

(Mot. at 11–15.)  Defendant's records reflect that Plaintiff first complained in April

2009.  According to Plaintiff's deposition testimony, at the end of each month

Graham's class would dress in professional attire and have a party.  (Morales Depo. at 78:12–15.)  On one professional attire day, Plaintiff wore a skirt suit, and when she walked into class, Graham said, "Wow.  That's what you call professional," referring to her attire.  (<u>Id.</u> at 78:19–20, 79:4–5.)  Then, apparently speaking to the rest of the class, he said: "Some of you young ladies that are dressed up, that's not professional.  You're dressed like if you're going to a club.  How are y'all going to find a job like that?"  (<u>Id.</u> at 79:5–8.)  In her deposition testimony, Plaintiff acknowledged that Graham appeared to be "using [her] as an example to some of the younger ladies."  (<u>Id.</u> at 79:11–12.)  This account is consistent with a Student Complaint Report maintained by Defendant, which states that in April 2009 Plaintiff complained to the Assistant Director of Education and the Director of Education that Graham had told her "you look nice today," and Plaintiff "didn't[] like the tone."  (Mot. Ex. 5 at 1.)  Plaintiff's Student Activities Record also indicates that Plaintiff spoke to the Assistant Director of Education and the Director of Education about "classroom concerns" on April 3, 2009.  (Mot. Ex. 3 at 1.)

In response to Plaintiff's April 2009 complaint,[2] Defendant claims that it followed up by speaking with Graham, warning him that "any comments made

---

   [2]   Defendant asserts that the conduct complained of in April 2009 does not amount to sexual harassment.  (Doc. # at 10–11.)  That may be so, but the Court declines to rule on that issue, because it is apparent that whatever the nature of the

regarding a student's appearance may be taken the wrong way," "check[ing] in on [Graham's] class more often," and "ask[ing] other students for feedback." (Mot. at 5.) These claims are borne out by the Student Complaint Report, which states that "instructor was advised [that Plaintiff didn't like his tone] and to be careful with woman [sic] they can preserve [sic] this incorrectly." (Mot. Ex. 5 at 1.) The report also states: "proceed to check in on class more often asked other students for feedback all fine," and "no further issues or complaints came forward." (Id.) Plaintiff's Student Activities Record also states that in response to Plaintiff's April 2009 complaint, the Director of Education "spoke with Program Director and Instructor on this." (Mot. Ex. 3 at 1.) The Court concludes that the Defendant reacted reasonably under the circumstances. Defendant took Plaintiff's concerns seriously enough to speak with Graham and proceed to monitor his class more carefully.

Defendant's records show that Plaintiff complained about Graham again in January 2010. The incident that led to the second complaint occurred on December 28, 2009, when Graham sent Plaintiff a series of sexually explicit text messages. (Mot. Ex. 5 at 1–2.) On January 13, 2010, Plaintiff showed Graham's sexually explicit text messages to Vivian, an Everest Institute Career Services employee. (Mot. Ex. 5 at 1.) Plaintiff was asked to come back the next day to

conduct complained of, Defendant did not act with deliberate indifference on this occasion.

16

meet with the Director of Career Services and the Director of Education.  (Id.)  The

Assistant Director of Education and the Police Department were also informed of

the situation.  (Id.)  According to the school's records, at the meeting on January

14, 2010, Plaintiff "was tearful and obviously disturbed."  (Id.)  Plaintiff claimed

that Graham had made other comments while she was a student that "would make

her feel picked on," but that she had never reported them because "she always felt

threatened that she wouldn't be able to succeed if she told Administrators about the

comments he was making to the class and herself in particular."  (Id.)  She said that

she "wanted to succeed on her own without help."  (Id.)  Plaintiff stated that she

had never received any other phone calls or text messages from Graham.  (Id.)

   After the meeting on January 14, 2010, the Director of Career

Services and Director of Education made the following notes:

> This is clearly not how we expect our instructors to behave and leave
> speculation on the validity of the classroom integrity. . . .This may not
> be considered harassment as it is difficult to tell if it was invited or
> now [sic], the ethics and good judgment were lacking.  We are
> recommending Administrative leave while HR looks into this and
> possible termination.

(Id.)  On January 21, 2010, the Director of Education sent an email to a number of

Defendant's employees, including the Regional Director of Operations and Everest

Institute's Campus Vice President, recommending Graham's termination "based on

a violation of the sexual harassment and fraternization policy."  (Mot. Ex. 7.)  The

Regional Director of Operations and the Campus Vice President approved of the

17

termination.  (Id.)  The Court again finds that Defendant's reaction was reasonable.
Defendant's response indicates that it took Plaintiff's complaint seriously.
Defendant notified several top administrators—the Director of Career Services,
Director of Education, and the Assistant Director of Education—as well as the
Police Department, and ultimately chose to terminate Graham.

       In addition, the Court notes that the incident Plaintiff complained of in
January 2010 occurred after Plaintiff graduated from Everest Institute.  Title IX
provides that no person shall be subjected to discrimination under an education
program receiving Federal funds.  20 U.S.C. § 1681(a).  As noted above, the
Supreme Court has held that a teacher's sexual harassment of a student constitutes
actionable discrimination under Title IX.  See Franklin v. Gwinnett Cnty. Pub.
Sch., 503 U.S. 60, 75 (1992).  However, Plaintiff does not cite to any authority,
and the Court is not aware of any, that stands for the proposition that a graduate's
out-of-school interactions with a former teacher can form the basis for a Title IX
claim against the school.  Other courts have indicated that a non-student may not
maintain a Title IX claim.  See Urie v. Yale Univ., 331 F. Supp. 2d 94, 97 (D.
Conn. 2004) (dismissing the plaintiff's claim where the only alleged harassment
took place after plaintiff graduated); cf. Yog v. Tex. S. Univ., No. H-08-3034,
2010 WL 4053766, at *4 (S.D. Tex. Aug. 30, 2010) (holding that plaintiff's claim
was covered by Title IX because her position as a research assistant was part of her

18

full-time academic studies).  Thus, this incident cannot form the basis for a Title

IX sexual harassment claim.  But in any event, for the reasons discussed above,

Defendant did not respond to Plaintiff's January 2010 complaint with deliberate

indifference, and thus could not be held liable under Title IX even if Plaintiff had

been a student when the incident occurred.

       For the reasons discussed above, the Court agrees with Defendant that

it did not react with "deliberate indifference" when Plaintiff complained about

Graham in April 2009 or January 2010.  However, Plaintiff testified during her

deposition that she complained on another occasion.  According to Plaintiff, one

day after class Graham cornered her alone in his classroom, touched her breast, and

forced her to kiss him.  (Morales Depo. at 96:1–4, 97–98.)  Plaintiff stated that

after this incident she arranged a meeting with Madrigal, Defendant's Director of

Education, to talk about Graham's behavior.  (Id. at 102–105.)  Plaintiff does not

recall the precise date she met with Madrigal, but it was sometime before she

started her externship.  (Id. at 105:9–10.)  Plaintiff brought her classmate, Munoz,

to the meeting.  (Id. at 105:13–25.)  During the meeting, Plaintiff testified, she told

Madrigal "everything" that Graham had done: "nit-picking," asking her out,

threatening her when she refused to go out with him, even telling her "that he knew

where she lived."  (Id. at 107:7–14.)  Plaintiff stated that she also told Madrigal

that Graham "forced himself on [her]."  (Id. at 113:15–17.)  According to Plaintiff,

Madrigal told she was going to "investigate" and "keep an eye on [Graham]," (id.

at 112:12–17), but "nobody did an investigation on nothing" (id. at 148:16–17).

Defendant points out that Plaintiff's deposition testimony is

contradicted by the school's records—which indicate that Plaintiff only

complained about Graham twice, in April 2009 and January 2010—and by

Madrigal herself.  Madrigal executed a sworn statement, which reads in relevant

part:

> At no time during my employment did Ms. Norma Morales
> ever make a complaint to me that any of the instructors at Everest
> were sexually harassing her or touching her in an inappropriate
> fashion.  Had such a complaint been made I would certainly
> remember it.  I would have documented the complaint, reported it to
> my superiors and an investigation would have immediately taken
> place.
> While it is not unusual for students to report feeling like classes
> are difficult or that their instructors are requiring too much of them, it
> would be very unusual for a student to report being sexually harassed
> by an instructor.  It is not something I could forget.
> As an educator and as a woman I would take any allegation of
> sexual harassment by an instructor against a student extremely
> seriously and I would have ensured that immediate action was taken
> to [investigate] the matter had such an allegation been made.

(Mot. Ex. 11.)  Defendant observes that Plaintiff's account is also contradicted by

Munoz's deposition testimony.  Munoz claims that she accompanied Plaintiff to a

meeting between Plaintiff and Madrigal.  ("Munoz Depo.," Mot. Ex. 10 at 30:9–

19.)  When asked what Plaintiff told Madrigal at the meeting, Munoz stated:

> That [Graham] was rude, that the way he would talk to her, [Plaintiff]
> didn't appreciate.  I don't remember the whole conversation.  I just
> remember that she was mad.  She wanted – She wanted something
> done.  And that lady had said she'd had other complaints but we had
> to have some – we had to have proof.  We had to show proof.

(Id. at 32:11–17.)  Munoz did not recall Plaintiff telling Madrigal anything about

Graham's alleged sexual misconduct.

        The Court acknowledges that Plaintiff's testimony is not consistent

with other evidence submitted by Defendant.  However, at this stage, the Court

must draw all reasonable inferences in Plaintiff's favor, and may not make

credibility determinations or weigh the evidence.  Reeves, 530 U.S. at 150.

Assuming, as the Court must, that Plaintiff in fact told Madrigal that Graham

forced himself on her, Madrigal's failure to take any action at all to investigate the

situation or discipline Graham was clearly unreasonable.  Davis, 526 U.S. at 564

(noting that a school's failure "to investigate or to put an end to the harassment"

suggested deliberate indifference).  Given Plaintiff's testimony, the Court cannot

grant Defendant summary judgment on Plaintiff's Title IX sexual harassment

claim on the basis that there are no disputed issues of material fact.

        However, Defendant also maintains that, even if there exists a genuine

issue of material fact, Plaintiff's sexual harassment claim is barred by the statute of

limitations.  Title IX does not contain a statute of limitations.  However, the

Supreme Court has held that claims arising under 18 U.S.C. § 1983 within a

particular state should be governed by that state's statute of limitations governing personal injury claims, <u>Wilson v. Garcia</u>, 471 U.S. 261, 280 (1985), and every appellate court to consider the issue has held that Title IX claims are also governed by state personal injury statutes of limitations, <u>see</u> <u>Walker v. Barrett</u>, 650 F.3d 1198, 1205 (8th Cir. 2011); <u>Wilmink v. Kanawha Cnty. Bd. Of Educ.</u>, 214 F. App'x 294, 296 n.3 (4th Cir. 2007); <u>Stanley v. Trustees of Cal. State Univ.</u>, 433 F.3d 1129, 1134 (9th Cir. 2006); <u>Curto v. Edmonson</u>, 392 F.3d 502, 504 (2d Cir. 2004); <u>M.H.D. v. Westminster Sch.</u>, 172 F.3d 797, 803 (11th Cir. 1999); <u>Lillard v. Shelby Cnty. Bd. of Educ.</u>, 76 F.3d 716, 729 (6th Cir. 1996); <u>Bougher v. Univ. of Pittsburgh</u>, 882 F.2d 74, 77–78 (3d Cir. 1989).  Thus, the Court concludes that Plaintiff's sexual harassment claim is governed by Texas's two-year statute of limitations applicable to personal injury actions.  <u>See</u> Tex. Civ. Prac. & Rem. Code § 16.003.

                Plaintiff filed her Original Petition in state court on October 12, 2011. (Mot. Ex. 9.)  Accordingly, Plaintiff cannot prevail if the events giving rise to her claim occurred before October 12, 2009.  Defendant maintains that any injury Plaintiff suffered as a result of Defendant's alleged inaction occurred prior to that date, and that Plaintiff's Title IX claim is therefore time-barred.  The Court agrees. "Under federal law, a cause of action accrues the moment the plaintiff knows or has reason to know of the injury that is the basis of his complaint."  <u>Helton v.</u>

Clements, 832 F.2d 332, 334–35 (5th Cir. 1987).  In a Title IX sexual harassment

case, a school—such as Defendant—may be held liable for a teacher's sexual

harassment of a student if the school has actual notice of the harassment and

responds with "deliberate indifference."  Gebser, 524 U.S. at 292–93.  "In order to

support liability, the deliberate 'indifference must, at a minimum, cause [students]

to undergo harassment or make them liable or vulnerable to it.'"  Stanley v.

Trustees of Cal. State Univ., 433 F.3d 1129, 1137 (9th Cir. 2006) (quoting Davis,

526 U.S. at 645).  Accordingly, Plaintiff's claim is time-barred unless she can

establish that the school's alleged indifference caused her to undergo harassment

while she was still a student, but within the limitations period.  See Stanley, 433

F.3d at 1137 (holding that student's hostile environment claim was barred where

she failed to allege that the school caused her to undergo any harassment during

the limitations period).

        Here, there is no evidence that Plaintiff suffered any harassment on or

after October 12, 2009.  The program Plaintiff was enrolled in included a period of

coursework followed by an externship.  Once the externship began, classes

stopped.  (Munoz Depo. at 41:2–5.)  Both Plaintiff and Munoz testified that their

meeting with Madrigal occurred before they began their externships.  (Morales

Depo. at 105:9–10; Munoz Depo. at 30–31.)  Plaintiff also testified that Graham

behaved inappropriately on only one occasion after her meeting with Madrigal.

23

(Morales Depo. at 120–121, 125:11–16.)  That incident took place during class (id. at 120–121), and thus occurred before Plaintiff began her externship.  According to Plaintiff's Student Activities Record, she was already working at an externship on October 5, 2009; on that day, she called members of Defendant's administration to report that she had concerns about her externship site.  (Mot. Ex. 3 at 4.) Plaintiff's deposition testimony confirms that she had problems at her first externship and asked to be transferred to another site.  (Morales Depo. at 179– 180.)  Thus, there does not appear to be any dispute that the last incident of alleged harassment—while Plaintiff was still a student—occurred before October 12, 2009. Plaintiff's Title IX claim is time-barred.  Defendant is, therefore, entitled to summary judgment on Plaintiff's Title IX sexual harassment claim.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Second Motion for Summary Judgment (doc. # 37), **DISMISSES WITHOUT PREJUDICE** Plaintiff's negligent hiring cause of action for failure to state a claim, and **GRANTS** Plaintiff leave to file an amended complaint on or before September 3, 2013.  Failure to file an amended complaint will result in the dismissal with prejudice of Plaintiff's negligent hiring claim.

IT IS SO ORDERED.

DATED: San Antonio, Texas, August 2, 2013.

_____
David Alan Ezra
Senior United States District Judge